[No. 9345. Department One. July 11, 1911.]

## SKAMANIA BOOM COMPANY, *Respondent*, v. C. M. YOUMANS et al., *Appellants*.[1]

LOGS AND LOGGING—TIMBER—DEEDS—RESERVATION—CONSTRUCTION —PUNCTUATION. In a deed of land reserving all timber and right to enter for the purpose of removing the timber and the construction and maintenance of a logging road thereon forever, the word "forever" will not be construed to refer only to the maintenance of the logging road, because set off by commas with that clause; since punctuation is of little aid in construction, and the real value and essence of the reservation was the timber and right forever to remove it.

TRESPASS—CUTTING TIMBER—TREBLE DAMAGES—PENAL STATUTES. Rem. & Bal. Code, §§ 939, 940, imposing treble damages for cutting and removing any timber "on the land of another person" unless the trespass was "casual or involuntary" or the defendant had "probable cause to believe that the land was his own," has no application where the owner of the fee cut and removed timber that had been reserved from the grant and belonged to another; since the statute is penal and must be strictly construed, and defendant had probable cause to believe that the land was his own, within the proviso fixing single damages.

Appeal from a judgment of the superior court for Skamania county, Holcomb, J., entered October 17, 1910, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action for trespass. Modified.

*Miller & Crass*, for appellants.

*George S. Shepherd*, for respondent.

Gose, J.—This action was brought to recover treble damages for the cutting of standing timber. There was a judgment for the plaintiff. The defendants have appealed.

The essential facts are as follows: On September 8, 1900, one Day, being the owner of 160 acres of land in Skamania

[1]Reported in 116 Pac. 645.

county, sold and conveyed it to one Sweeney, reserving unto himself, his heirs and assigns, "all the timber on the above described premises, and the right to enter into and upon the same for the purpose of removing said timber, and the construction and maintenance of a logging road thereon forever." On March 6, 1901, Day sold and conveyed all the timber on the land to respondent, together with "the right to enter into and upon the same for the purpose of removing said timber and the construction and maintenance of a logging road thereon forever. The intention being to grant to said corporation, the Skamania Boom Company, all the rights and privileges reserved by myself, my heirs and assigns, in a certain deed made by me to J. F. Sweeney on September 8, 1900." On February 11, 1903, Sweeney sold and conveyed the land to one Arnold and others, by an instrument wherein he covenanted with the grantees that he was seized in fee simple, and that the premises were free from all incumbrances, "except standing timber sold on said premises and right of way over same." On December 1, 1903, Arnold and his cograntees conveyed the land by a deed of quitclaim to the Skamania Lumber Company, a corporation, and on June 17, 1907, it conveyed the land to one C. M. Youmans, one of the appellants, by a deed of general warranty. The appellants are now the owners of the land. Prior to the commencement of the action, the appellants cut and removed from the land about 1,500,000 feet of standing timber. The trial court found that the timber was of the reasonable value of $2,000, and entered a judgment against the appellants for $6,000.

The appellants first contend that the word "forever" in the reservation clause in the first deed refers only to the construction and maintenance of the logging road, and that the respondent had only a reasonable time in which to remove the timber; whilst the respondent insists that the word "forever" has reference to both the right to remove the timber and to construct and maintain a logging road. The appellants ar-

gue that the punctuation in the reservation clause compels a construction in their favor. The original deed is not before us, but assuming that the certified copy carries the punctuation of the original deed, we do not think that the reservation clause is susceptible of the construction contended for by the appellants. It is elementary that a deed, like any other written instrument, will be read as an entirety for the purpose of determining its true meaning. The punctuation of an instrument is ordinarily of little aid in construing it. As was said in *Ewing v. Burnet*, 11 Pet. 39:

"Punctuation is a most fallible standard by which to interpret a writing; it may be resorted to, when all other means fail; but the court will first take the instrument by its four corners, in order to ascertain its true meaning; if that is apparent, on judicially inspecting the whole, the punctuation will not be suffered to change it."

The reservation of the right to construct and maintain a logging road was no doubt for the purpose of giving a practical value to the right to enter upon the land for the purpose of removing the timber. The real value and essence of the reservation was the timber, with the right forever to remove it by means of a logging road.

The appellants next contend that the statute, Rem. & Bal. Code, §§ 939, 940, does not authorize the imposing of treble damages. We think this contention must be sustained. Section 939, so far as applicable here, provides that, whenever any person shall cut down or carry off any timber "on the land of another person . . . without lawful authority," if judgment be given against him, it shall be given for treble the amount of damages awarded. Section 940 provides that, if it appear upon the trial that the trespass was "casual or involuntary," "or that the defendant had probable cause to believe that the land on which such trespass was committed was his own," judgment shall only be given for single damages. In *Gardner v. Lovegren*, 27 Wash. 356, 67 Pac. 615, it was held, that the statute under consideration is penal in

its nature; that it would not be construed as an ordinary civil statute, but that it would be limited by the rule of strict construction.    The statute is not applicable to the facts before us.    The appellants did not cut the timber "on the land of another person" within the intent and meaning of § 939. Moreover, they had probable cause to believe "that the land on which such trespass was committed" was their own within the meaning of § 940.    The statute does not provide that one who cuts the timber of another without regard to the place of cutting or to the ownership of the land from which it is cut shall be holden in treble damages.    To fall within the statute the timber must be cut upon the land of another person, and the trespass must not have been casual or involuntary, but as was said in the *Gardner* case, "the intent to commit trespass must appear."

The respondent has cited 28 Am. & Eng. Ency. Law (2d ed.); p. 541; 25 Cyc. 1549; *McFeters v. Pierson*, 15 Colo. 201, 24 Pac. 1076; *Gulf C. & S. F. R. Co. v. Foster* (Tex. Civ. App.), 44 S. W. 199, and argues that these authorities announce a rule of interpretation which supports the judgment for treble damages.    The Cyc. announces the rule that a contract for the sale of timber must be in writing under the statute of frauds, since standing timber is a part of the realty.    The Ency. of Law says that, if the vendee under the contract is to have the right to the soil for a time for the purpose of the further growth of the timber, he has an interest in the land, and that such a contract must be in writing under the statute of frauds.    The *McFeters* case holds that the locator of an unpatented mining claim who has fully complied with the mining laws is, so long as he continues such compliance, the owner of the claim for all practical purposes. The *Foster* case holds that an action for damages for the destruction of an orchard growing upon the plaintiff's land is a local action within the venue statute, and that the word "land," in its ordinary legal sense, comprehends everything

of a fixed and permanent nature, and therefore embraces growing trees. In *Seymour v. La Furgey*, 47 Wash. 450, 92 Pac. 267, this court held that a contract for the sale and removal of standing timber affects the title to real estate within the meaning of our venue statute. We do not question the view announced by these authorities. If the statute were not of a penal nature, it could be extended by an equitable construction to embrace the facts before us. The substantial title to the land, however, is in the appellants. The title to the timber was in the respondent, with the added right to enter upon the land, construct and maintain a logging road, and remove the timber. The case of *Northern Pac. R. Co. v. Myers-Parr Mill Co.*, 54 Wash. 447, 103 Pac. 453, cited by the respondent, is not in point. There the prevailing party owned both the fee to the land from which the timber was cut and the timber as well.

Finally, it is urged that the court erred in finding that the reasonable value of the timber exceeded the sum of one dollar per thousand feet. There is competent and substantial evidence to support the finding of the court as to the value of the timber, and we will not disturb its finding in this respect.

The judgment is reversed, with directions to enter a judgment in favor of the respondent for $2,000, with interest from the date of such judgment. The appellants will recover the costs of this appeal.

DUNBAR, C. J., PARKER, and MOUNT, JJ., concur.

FULLERTON, J., concurs in the result.